Good morning, Your Honors. Josephine Petrick for the Plaintiffs Appellants. I would like to reserve four minutes for rebuttal. Please watch the clock. Thank you. For decades, the city of Palos Verdes Estates has acted with deliberate indifference to the rights held by the public to access California's public coastline and to equally access local police services. The city and its police have thereby enabled a gang of local Palos Verdes Estates residents to keep the public away from its public resources using violence, harassment, property destruction, and intimidation. As a result, the city and its world-class natural resources have been off-limits to anyone other than its affluent, predominantly white residents. If localism with its attendant harassment, threats, and violence is not actionable and redressable against the city of Palos Verdes Estates, it is not actionable anywhere. In my time today, I'll focus on the District Court's summary judgment ruling and otherwise rest on the briefs unless the panel has other questions. I have a question. Yes. Are you including claims for racial and gender discrimination? Your Honor, those claims were asserted below because of the nature of much of the discrimination that has been faced by plaintiffs and other unnamed class members. But plaintiffs have consistently – their theory has consistently been that the city's deliberate indifference to the rights of plaintiffs and to the public is what's actionable here regardless of the level of scrutiny. I'm not sure if you answered my question. I just want to know if you have claims for racial or gender discrimination. Yes, Your Honor. The plaintiffs have been excluded from – principally have been excluded from Palos Verdes Estates principally on the grounds that they are outsiders, non-locals. But the city's deliberate indifference to them has enabled the local residents to discriminate against them not just because they're outsiders, but it's also taken on a more intense character when the plaintiffs and the outsiders are people of color and women. I take that as a yes. Is that – Yes, Your Honor. Okay. Got it. But I do want to be clear that plaintiffs' position is that regardless of the level of scrutiny, whether it's rational basis, intermediate scrutiny, or strict scrutiny, the analysis should be the same just as in Navarro. So turning to the District Court's summary judgment order, multiple genuine issues of material fact as to the city's involvement and deliberate indifference here preclude summary judgment. So if I'm trying to understand the nature of the equal protection claim, is it a claim that the non-residents of this Lunada Bay area were deprived of police services because of being non-residents? Or is it a claim that this – some other claim? Just define exactly what your claim is. Yes, Your Honor. I think that is a fair way to articulate the claim. Okay. So then when I look at the complaint and the complainants, Reed and Spencer, and their allegations, I didn't see any allegation that they were actually personally deprived of protective services. So is that wrong? How would you identify in the complaint where they were deprived of the police's protective services? Well, Reed and Spencer were deprived of the – if I may go beyond Your Honor's question and actually turn to the evidence, the summary judgment evidence, unless Your Honor's question is about the notice that the city had. But first turning to the actual evidence that the plaintiffs were denied police services, were equal police services within the meaning of this Court's Elliott Park opinion. Officers have personally observed harassment threats and have received complaints from both Spencer and Reed regarding – So Spencer went out and the police came with him and gave him an escort and he thanks them and they're giving more protection it seems to him than anyone else. And with Reed, the police agree that she can file a complaint. And there's no indication that, as in Elliott Park, where the police provided no services to the Korean person but did provide services as to a Micronesian person in another traffic accident. So I didn't see anything like that in the material. So can you point me to what I should be looking at? Certainly, Your Honor. And that is one of the central disputed facts that we think makes this case inappropriate for summary judgment. So one example of the denial of police services that Ms. Reed experienced, just to take one example, on January 29th, when she had the interaction with David Mello and he screamed at her, police were actually present yet did nothing. And they actually tried to discourage her from making a report because they said, well, it could be hard on you if you tried to make a report. And they asked why a woman would want to go to the bay, Lunata Bay anyway. That's in the record page 1557. So did she file a report ultimately? She ultimately did file. In that case, she did not. The officers made them leave the bay to make a report, so make a report to the officers who were present at the time. And they said, we cannot guarantee your safety if you stay here. So they had to go to the top of the cliffs. And then a similar incident when she was sexually harassed by Defendant Johnston. There were also police at the top of the cliffs at that time. And they not only did not take her complaint seriously, they also discouraged her from making a report. She had to follow up multiple times with her attorney. And when she went into the police station to view a photo lineup, they refused. And they said, well, that would interfere with a police investigation, so we can't have you be looking at the photos. And ultimately, Johnston was also not – a rest warrant was issued, but he was not prosecuted. Now, do we need to have the – do the appellants have to raise a similarly situated case where a resident was treated more favorably? Because I don't think there's anything like that in your materials. But do we need that? Or am I wrong that there is something like that? No, Your Honor. I mean, in this case, I think the facts just aren't conducive to that particular kind of analysis because there's absolutely no evidence that the locals were ever harassed in a similar manner by the defendants. So there's no one-to-one comparator that we can see. But there is a mountain of evidence. Excuse me, when you said harassed by the defendants, did you mean by the – By the observers or by the police? There is no – let me rephrase. There is absolutely no evidence or indication in the record whatsoever that a local was harassed by a non-local, so there's no really comparator situation. But what we do have is a mountain of evidence that the police did not respond to locals' complaints and that in the declaration of Benjamin Sinuit, the reserve officer, he detailed at length how the police officers in Palos Verdes would affirmatively target outsiders' vehicles for towing, that a reserve officer owned the towing company and benefited from the arrangement, and that they would go out of their way to target non-locals. Assuming rational basis review applies here, how do the plaintiffs prevail? Because the record shows that the police did try some efforts to curb the Lunada Bay Boys, maybe not as much as the plaintiffs want, but obviously they have some discretion. That's not the only issue the city has. For example, they have a burglar and other issues, so they have to allocate their resources. So assuming the rational basis applies, isn't what the city has done past muster under that test? No, Your Honor. And I think the key here is that that's ultimately a question of fact for the jury. The city did offer evidence that it provided police patrols, that it handed out flyers, but in the case of the police patrols, starting from May 2015 forward, Chief Kepley testified that of the so purportedly 400 police patrols they sent to the cliffs, they had not identified any criminal activity or had anybody come to report criminal activity during that time. That would be from May 20, 2015 forward, as the record reflects on page 771. But each of the examples I gave, including the others, where Reed made complaints to the police and it fell on deaf ears, and Spencer made complaints to the police and it fell on deaf ears, and Reed was even actively discouraged from filing a police report, all of those happened during that period. So a finder of fact could be very interested to hear that evidence, but could resolve that inference in favor of the plaintiffs and against the city. And I do want to draw the inference that the city's claimed efforts to stop localism were stale, ineffective, otherwise overstated, and even were perhaps implemented to avoid media scrutiny, for example. That would be one inference a finder of fact could draw. Judge Lee's question goes to there's a difference between stale and ineffective versus discriminatory. And I think your claims, as I understand them, require that you prove discrimination. Yes, Your Honor. And that takes me back actually to another point I wanted to raise in response to Judge Ikuda's question about whether there are comparator plaintiffs here, because that's not something that was required in Elliott Park. In Elliott Park, the standard is... They did have an example, though, that a Micronesian who was involved in a traffic accident did get police services, whereas the Korean did not. But that wasn't here. There was no such comparator here. Correct, Your Honor. So how do we show intentional discrimination against non-residents? One way that the plaintiffs would want to do that before a finder of fact at trial would be the testimony of Benjamin Sinuit, the reserve officer, who testified that... So his period of working was 2007 to 2012, so that doesn't cover any of the current events, correct? That's correct, Your Honor. But plaintiffs are tasked with showing... How do we know that's still relevant? Well, it's consistent with the experience of the named plaintiffs and others, the 22 declarations, nine of which are in the two-year period preceding the complaint, consistent with the city's deliberate indifference. And so under Park, Elliott Park, the question is whether the city acted with a deliberate indifference of the constitutional rights of the plaintiffs because of some disfavored characteristic. And here we have the evidence of Benjamin Sinuit. We also have the evidence in the form of those 22 declarations, all of which show an unbroken line of conduct by both the Bay Boys in attempting to exclude people from the shoreline using violence and threats and intimidation, and also by the city in consistently turning a blind eye. And that custom policy or practice is made all the more vivid by the reserve officer's declaration that this was done intentionally. You want to save the rest of your time for me? Yes, Your Honor. All right, we'll hear from the other side. Good morning. May it please the Court, I'm Ed Richards with CUTAC-ROC. I represent the respondent city of Palos Verdes Estates and Chief Kepley. I'm going to reserve, if I may, five minutes so that my colleague can address you. He represents one of the Bay Boy defendants, and there's a separate issue there. So if I may, I'll try and reserve five for that. Okay, please watch the clock. I think this case demonstrates one of the unique natures of our judicial system in that anybody can sue anybody in our country based upon mere allegations. And once a person successfully makes sufficient allegations to create a viable complaint, it opens the door to an entire array of discovery tools that are at that party's disposal in order to develop evidence to prove the allegations. In this case, that door was opened with the filing of the complaint, and for nearly two years and at a cost of hundreds of thousands of dollars for the city to defend itself in this case, an effort was made to develop any evidence to support the allegations of a violation of equal protection in this case that I respectfully submit. As Judge Otero found at the district court, there is no evidence to support the elements necessary for the plaintiffs to prevail with an equal protection claim. Rule 56 has a purpose, and the purpose is that in a situation where after the party is given a reasonable period of time to develop evidence and they fail to do so, it mandates that the action be dismissed at the summary judgment stage. And I respectfully submit that's exactly what we have here. As the court pointed out a moment ago, some of the elements that have to be established by the plaintiff in this case is that the plaintiffs in this case, the named plaintiffs, were exposed to disparate treatment because of their category as a nonresident, and I submit to you there is no evidence of that. Similarly, even if they could establish that, they are obligated to establish that that disparate treatment was the result and was caused by a custom policy or practice of the city of Palos Verdes Estates, and there is no such evidence. What about opposing counsel's argument that the outsiders, if I could just use that term, that their cars were targeted for towing? That's her allegation. Again, it's an allegation, and I think the record... That there's no evidence of, and she has evidence of that, so could you respond to that? Well, I don't think there is any evidence of outsiders having their cars targeted. Well, there's the affidavit. She relies on the affidavit by the insurance unit. The record shows, number one, as you pointed out, his employment was long before any of the events that are subject to this litigation. Secondly, the record will reflect, I think, that he is in fact a disgruntled ex-employee of the city who was discharged. More importantly, though, his declaration simply asserts that nonresident cars were targeted by members of the Bay Boy Defendants. It doesn't contain any evidence whatsoever that the city was complicit in that or that the city failed to take action. And in fact, the record as a whole shows that there are complaints that have come in with regard to that over the year, which have in fact been followed up and investigated by the police. Can you address the plaintiff's allegations that it was more than just police making decisions about allocation of resources, but they were perhaps in cahoots with the Lunada Bay Boys, that someone had tipped off the sting operation, or that the Bay Boys were sharing beers with police officers? Can you address those allegations? Sure. Those are allegations, and after two years of litigation, I respectfully submit, there is no evidence of that on the record whatsoever. The only evidence that even touches on that is there's evidence from a sergeant by the name of Barber who acknowledges that he has socialized on occasion with members of the Bay Boy Defendants. There is no evidence to suggest, and in his deposition, he denied that that association in any way affected his police activities. There simply is, and I keep repeating myself, and I apologize for that, the allegation is made and two years of discovery takes place, and there is no evidence to support that. So opposing counsel also relies on Reed's experiences, where she was discouraged from filing a complaint and not given the support by the police, despite being harassed on the beach. What's your response to that? The evidence is clear that on both of those occasions, Reed went to the police and made a complaint. The complaints were thoroughly and properly investigated. The investigations were completed, and they were sent to the district attorney's office for prosecution. The decision whether to prosecute is entirely that of the county DA. That is not a function of the Palos Verdes Police Department. Her complaints were investigated, thoroughly investigated. The investigation was complete, and the evidence is clear that those investigations were referred to the district attorney for prosecution, who independently decided not to prosecute because there was insufficient evidence to do so. And I think I'm coming up on ten minutes. Anything else I can address? Apparently not. Thank you, Your Honors. Good morning, Your Honor. Robert S. Cooper of Buckhalter. On behalf of individually named defendant, Brant Blakeman, I'll be brief as I have to. Mr. Blakeman is an individual that has never turned on a computer in his life. He was amazingly hit with a nearly $70,000 sanction in this case based on Rule 37E, the electronic discovery statute. He was not found to have any intent to deprive the plaintiffs of any evidence, properly so. But nevertheless, the magistrate to whom this issue was referred, Magistrate Oliver, hit him with a sanction for a failure to preserve four text messages on an archaic flip phone. And I'll submit to you that this was error for three reasons. Number one, there was no forensic evidence to support Magistrate Oliver's finding. The plaintiffs never even analyzed the phone. They never requested it. There's some evidence in the case from the city's forensic people who did analyze the phone that there's no way to retrieve messages from that phone. The district magistrate judge said the duty to preserve was triggered on April 14th when he was served. Do you disagree with that? No, we agree with that. That's the date he was served. And these four text messages that were discovered well after discovery closed and after summary judgments were pending and the motion for- But two of the text messages were on April 12th. They were sent by one of the other defendants, so it was two days before he was served. So isn't it reasonable for the judge then to infer you get a text message from one of the defendants two days before you were served, and he didn't testify. They had a policy of deleting text messages, or he recalled deleting it. It somehow vanishes. The judge can reasonably infer that it was deleted intentionally. But, Your Honor, to hit him with a $70,000- He could easily have deleted those, and that was his habit. But we'll never know that. How can you hit him with a $70,000 sanction when we don't know whether those messages were recoverable on the date he was served with the complaint? We don't know. Not knowing is different than assuming. I don't think you can draw an inference that he could have preserved those on the date he was served. Was there any evidence that he said he routinely deleted text messages on his phone? There wasn't because we didn't have the burden under Rule 37E. Well, I think it's your burden if you get served on April 14th and you got text messages from the other defendants April 12th and somehow that disappears. That looks very suspicious. Why wasn't there an abuse of discretion by the judge to make that inference? Your Honor, they relied on a declaration from a lawyer in the Hanson Bridget firm who is not an expert. It was a declaration they recycled that involved a different phone, an actual smartphone, not a flip phone like this archaic phone. We don't know whether it was overwritten. We don't know that. Is there any citation to any case law where we've affirmed that a duty to preserve evidence arises before service of a complaint? I don't believe so, Your Honor. That wasn't part of the underlying record, and that's because we agree that April 14th, the date he was served, was the date that triggered his duty to preserve evidence. There's just an assumption that the evidence existed as of that date. There's an assumption without any forensic evidence, and it could well have been deleted, maybe not, but how do you? These two of the messages, as Judge Lee indicated, temporally were very, very almost contemporaneous, but I'm just trying to get at whether I can't find any authority that really goes to this point that a duty to preserve arises prior to service of a complaint. Did your client contest knowledge of the controversy, knowledge of the coming lawsuit? There was no evidence one way or another that he knew about it. He contested that he had any knowledge of a duty to preserve before the date he was served. I have another question. I think one part of the sanction motion was, or sanction order, was to allow a follow-up deposition of your client, and I think if I'm reading the record correct, but it's a little unclear on our end, from what we have, that there were fees for that that were prospectively included in anticipation of a second deposition. First of all, am I right about that? You're correct about that, Your Honor. Did that deposition happen? No, Your Honor. The case was dismissed at the time that Mr. Blakeman was hit with this massive sanction. That was the— Is there any reason that part of the sanction order should stand? Did you ask for it to be modified, or where are we on that? Yes, Your Honor. We asked for it to be stricken because it can't possibly be curative. I'm just trying to be clear. We're communicating. Did you ask for that part of the sanction? As part of our papers, yes. I mean, we asked for no sanctions, obviously, but that was part of our argument, which was how can you order a deposition in a case that's been dismissed. So we did ask for that. Am I addressing what you wanted me to? Yes, you did, thank you. Okay. So are we reviewing the district court's and the magistrate judge's determination that the texts were still on the phone as of April 14th when he was served? Are we addressing that for clear error? Yes. So it was a factual finding. So your burden or your duty would be to show us that the district court's determination was clearly erroneous. And you're just raising—all I've heard so far is you're saying we don't know. So why is the—so that's not enough to show clear error. Why should we determine that the magistrate judge's and district court's determination was clearly erroneous? Your Honor, the plaintiff had the burden under Rule 37E to establish that he failed to— that my client, Mr. Blakeman, failed to preserve evidence. The burden was not on us. They could not even establish that such texts were still on his phone. And that was their burden. Judge Acuda's point goes—your time is ticking. Okay. She's asking a very important question. I apologize. Your burden on appeal, right? Yes. Could you speak to your burden on appeal? Burden on appeal is to demonstrate clear error on the part of the magistrate. So why was that a clearly erroneous finding? Because there was no evidence to support sanctioning an individual defendant $70,000 when text messages may not have been on the phone. It was a leap of faith based on a complete lack of forensic evidence. So the district court and the magistrate judges, Judge Lee was suggesting, had a race ipsa loquitur. It was like, you got it on April 12th. There's no reason for it to have been gone in two days, so I will infer, therefore, that it was purposely deleted. And so that seems to have been the basis for the district court and magistrate judges' determination. And so is there a case that says that sort of common sense reasoning is how I would characterize that is clearly erroneous in this context? I don't have a case that directly reflects that issue at all or even speaks to it, Your Honor. The judge reduced the fees requested by 30%, 40%, something like that? Is that right? Yes, Your Honor. I don't know what the percentage is, but, yes, it was a lot. They asked for $100,000 for one spoliation motion with five or six lawyers at $500 to $600 an hour against an individual defendant. This is a level of sanction that should be reserved for a corporate entity that is clearly intentionally spoliating electronic evidence, not for an individual such as Mr. Blakeman, who's never turned on a computer in his life, had an archaic flip phone, which was never analyzed in any respect, and he's hit with this massive sanction that no individual is going to be able to stomach. This is just not the proper use of Rule 37E. I think a sanction has to be made of sterner stuff against an individual. All right. Thank you, Your Honor. Thank you for your argument, and you have some time for rebuttal. Just a few points on rebuttal. First, with respect to the claims against the city, I wanted to turn back first to a question that Judge Lee raised about, you know, assuming rational basis review applies, how is it met here? And the first answer to that question, of course, was that there are genuine issues of fact that need to be resolved. But in terms of doctrine, this Court could follow and plaintiffs submit should follow its authority in the Navarro case, where there the Court found insufficient evidence that there would be gender discrimination but nevertheless held that the discrimination against or the disparate treatment against domestic violence 9-1-1 callers was actionable under the Equal Protection Clause because the practice of not treating domestic crimes as emergencies as compared to other 9-1-1 calls may have been the cause of the failure to send a squad car to assist Navarro, the plaintiff in that case. I wanted also to turn to some of the evidence that the city claims is nonexistent in the record. In fact, with respect to the sting operation, the evidence that Thiel asked the city to call off the sting operation and that the city, in fact, then did call off the sting operation is in the record at 8 excerpts of record, page 1745, where Thiel says, this better not be happening tomorrow. That is evidence that the city or jury could find that the city acquiesced to that highly unusual demand. The Benjamin C. Units Declaration also, as your Honor, as the panel noted, does say that the outsider's cars were targeted for towing, and that's in the record at 5 excerpts of record, 1052 to 1058. I see my time has elapsed. May I briefly address Mr. Blakeman's cross-appeal? I think we have your argument, unless... I think we have your argument. Thank you. Thank you. The case of Corey Spencer v. Renata Bayboys and Brian Blakeman is submitted.
judges: Ikuta, Christen, Lee